973 A.2d 233

**BOARD OF EDUCATION OF BALTIMORE COUNTY**

v.

**Mireille ZIMMER–RUBERT.**

**No. 69, Sept. Term, 2008.**

Court of Appeals of Maryland.

June 11, 2009.

Leslie R. Stellman (Shani K. Whisonant, Hodes, Pessin & Katz, P.A., Towson), on brief, for Petitioner.

John B. Stolarz (Stolarz Law Firm, Baltimore), on brief, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ALAN M. WILNER (Retired, Specially Assigned), LAWRENCE F. RODOWSKY (Retired, Specially Assigned), and RAYMOND G. THIEME, JR. (Retired, Specially Assigned), JJ.

GREENE, Judge.

 Md.Code (1974, 2006 Repl.Vol.), § 5–518(c) of the Courts and Judicial Proceedings Article provides that "[a] county board of education may not raise the defense of sovereign immunity to any claim of $100,000 or less." This case, brought pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, for the amount of $100,000, requires us to discern the extent to which § 5–518(c) waives the governmental immunity of the Baltimore County Board of Education ("Board"). The issue is essentially one of statutory interpretation, and we conclude that § 5–518(c) waives the Board's governmental immunity, meaning its general sovereign immunity and the immunity guaranteed by the Eleventh Amendment to the United States Constitution,[1] for all claims in the amount of $100,000 or less. Therefore, we shall affirm the judgment of the Court of Special Appeals.

## I.

We shall adopt the facts as set forth in the reported opinion of the Court of Special Appeals. *See Zimmer–Rubert v. Board of Ed.*, 179 Md.App. 589, 947 A.2d 135 (2008). The intermediate appellate court recited the facts as follows:

---

**1.** The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST amend. XI.

Born on January 16, 1949, [Ms. Zimmer–Rubert] is an experienced educator qualified to teach English, Spanish, German, and French. In March of 2004, [she] filed an application to teach foreign language in [the Baltimore County] high schools. Unsuccessful in her quest to secure a teaching position and, upon learning that young teachers were hired to fill vacant positions for which she was qualified, [Zimmer–Rubert] filed a Charge of Discrimination with the Equal Employment Opportunity Commission. On March 17, 2006, [Zimmer–Rubert] was granted a Right to Sue letter.

Within ninety days, [Zimmer–Rubert] filed a Complaint in the [C]ircuit [C]ourt[2] against [the Board], alleging age discrimination and "demanding judgment for compensatory damages in the amount of $100,000, attorney fees, pursuant to 29 U.S.C. § 626(b), interest and the costs of the action." [The Board] subsequently moved to dismiss [Zimmer–Rubert]'s suit [contending that it was entitled to the immunity guaranteed by the Eleventh Amendment to the United States Constitution].

A hearing on [the Board]'s motion was held on May 25, 2007. In a ruling from the bench on that same day, the trial court granted [the Board]'s motion, finding that [Zimmer–Rubert]'s ADEA claim was barred by [the Board]'s Eleventh Amendment immunity. Explaining her decision, the trial judge opined that, "on further reflection in looking at C.J. § 5–518, as well as *Alden v. Maine,* 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999), that [sic] the 11th Amendment immunity must be specifically waived, and it's not."

*Zimmer–Rubert,* 179 Md.App. at 592–93, 947 A.2d at 137.

The Court of Special Appeals reversed the judgment of the Circuit Court. *Zimmer–Rubert,* 179 Md.App. at 612, 947 A.2d

---

**2.** The ADEA provides for concurrent federal and state jurisdiction to hear complaints arising under the statute. 29 U.S.C. § 626(c). Zimmer–Rubert filed a complaint in the Circuit Court for Baltimore County.

at 149. In so doing, the intermediate appellate court first reasoned that the Board is an "arm of the state" entitled to Eleventh Amendment immunity. *Zimmer–Rubert*, 179 Md. App. at 603, 947 A.2d at 143. The court held ultimately, however, that § 5–518(c) of the Courts and Judicial Proceedings Article waived such immunity as to Zimmer–Rubert's claim. *Zimmer–Rubert*, 179 Md.App. at 612, 947 A.2d at 149. According to the court, "[u]nder the settled approach to statutory interpretation, the words 'any claim' [in § 5–518(c) ] cannot reasonably be read to exclude certain categories of claims." *Id.* The Board petitioned this Court for a writ of certiorari, and we granted the Board's petition. The dispositive question before us is "[w]hether the State of Maryland, pursuant to Section 4–105 of the Education Article and Section 5–518(c) of the Courts and Judicial Proceedings Article, enacted a valid waiver of Eleventh Amendment immunity?" [3]

## *II.*

In this case, there is no contention that the Board is not a State agency entitled to governmental immunity. *See Regents*

---

3. In its petition for certiorari, the Board presented to us the following questions:

 i. Whether the State of Maryland, pursuant to Section 4–105 of the Education Article, *Annotated Code of Maryland,* and Section 5–518(c) of the Courts and Judicial Proceedings Article, *Annotated Code of Maryland,* enacted a valid waiver of Eleventh Amendment immunity.

 ii. Whether the Court of Special Appeals erred in finding that Maryland county boards of education may not assert Eleventh Amendment immunity as an affirmative defense to "any claim" for $100,000 or less, even claims pursuant to federal statutes under which county boards are entitled to absolute Eleventh Amendment immunity.

 iii. Whether the Court of Special Appeals erred by treating the "concept of sovereign immunity" and "Eleventh Amendment immunity" as interchangeable by limiting the right of State agencies to assert Eleventh Amendment immunity from liability based upon an overly broad reading of Section 5–518(c) of the Courts and Judicial Proceedings Article.

 iv. Whether the Court of Special Appeals erred in finding that Eleventh Amendment immunity only extends to claims brought by citizens of that state in federal court.

*of the Univ. of Cal. v. Doe,* 519 U.S. 425, 429–30, 117 S.Ct. 900, 903–04, 137 L.Ed.2d 55, 60–61 (1997) (holding that only the states themselves, or a state agency or instrumentality that functions as an "arm of the state," may invoke sovereign immunity or the immunity afforded by the Eleventh Amendment (internal quotations omitted)); *Condon v. State,* 332 Md. 481, 492, 632 A.2d 753, 758 (1993) ("The doctrine [of sovereign immunity] is applicable to the State's agencies and instrumentalities, unless the legislature has explicitly or by implication waived governmental immunity."). We have long considered county school boards to be State agencies rather than independent, local bodies. *See, e.g., State v. Board of Education,* 346 Md. 633, 635 n. 1, 697 A.2d 1334, 1335 n. 1 (1997) ("The various county boards of education are State agencies."); *Board v. Secretary of Personnel,* 317 Md. 34, 44 n. 5, 562 A.2d 700, 705 n. 5 (1989) ("It is settled that county boards of education are State agencies."); *Bd. of Educ. v. P.G. Co. Educators' Ass'n,* 309 Md. 85, 95 n. 3, 522 A.2d 931, 936 n. 3 (1987) ("County boards of education are, of course, state agencies and not agencies of the county governments."); *Montgomery Co. Ed. Ass'n v. Bd. of Educ.,* 311 Md. 303, 317, 534 A.2d 980, 987 (1987) (recognizing the local boards as State agencies); *McCarthy v. Bd. of Education of A.A. Co.,* 280 Md. 634, 639–50, 374 A.2d 1135, 1138–43 (1977) (examining the history of Maryland public education from colonial times, through the Constitutions of 1864 and 1867 and the concomitant statutes, to conclude that the Board of Education of Anne Arundel County is a State agency); *Bd. of Ed. v. Montgomery County,* 237 Md. 191, 197, 205 A.2d 202, 205 (1964) (noting that a local school board is neither a branch of the county government nor an agency under its control); *see also Norville v. Board of Education,* 160 Md.App. 12, 35–62, 862 A.2d 477, 489–507 (2004) (discussing, and ultimately holding, that the Anne Arundel Board of Education is an arm of the State for purposes of Eleventh Amendment immunity), *vacated on other grounds,* 390 Md. 93, 887 A.2d 1029 (2005).

The question before this Court is, essentially, whether § 5-518(c) of the Courts and Judicial Proceedings Article waives

the Board's Eleventh Amendment immunity as to Zimmer–Rubert's ADEA suit.[4] As stated, § 5–518(c) of the Courts and Judicial Proceedings Article provides that "[a] county board of education may not raise the defense of sovereign immunity to any claim of $100,000 or less." The Board contends that § 5–518(c) constitutes a general waiver of sovereign immunity that is insufficient to waive the Board's Eleventh Amendment immunity. According to the Board, "states enjoy Eleventh Amendment immunity in their own courts" that can only be waived by explicitly consenting to suit in federal court. (Petr.'s Br. 13, 20). Conversely, Zimmer–Rubert maintains that the Board's Eleventh Amendment immunity is but a manifestation of its broader sovereign immunity that the General Assembly waived by virtue of § 5–518(c).

The Eleventh Amendment reads: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Although the Amendment, by its terms, applies only to suits brought against a state by citizens of another state or foreign state in federal court, the United States Supreme Court has "looked to 'history and experience and the established order of things,' rather than 'adhering to the mere letter' of the Eleventh Amendment, in determining the scope of the States' constitutional immunity from suit." *Alden v. Maine,* 527 U.S. 706, 727, 119 S.Ct. 2240, 2253, 144 L.Ed.2d 636, 661 (1999) (quoting *Hans v. Louisiana,* 134 U.S. 1, 13, 14, 10 S.Ct. 504, 506, 33 L.Ed. 842, 847 (1890)). Thus, for example, the Supreme Court has held that the Eleventh Amendment bars suits against states by their own citizens, *Hans,* 134 U.S. at 11, 10 S.Ct. at 505, 33 L.Ed. at 845, and by Native–American tribes, *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 47, 116

---

4. Also cited in the question presented is Md.Code (1978, 2008 Repl. Vol.), § 4–105 of the Education Article. Section 4–105(d) provides that "[a] county board [of education] shall have the immunity from liability described under § 5–518 of the Courts and Judicial Proceedings Article."

S.Ct. 1114, 1119, 134 L.Ed.2d 252, 261 (1996). In so holding, the Supreme Court "ha[s] understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition of our constitutional structure which it confirms: that the States entered the federal system with their sovereignty intact; that the judicial authority in Article III is limited by this sovereignty...." *Blatchford v. Native Vill. of Noatak*, 501 U.S. 775, 779, 111 S.Ct. 2578, 2581, 115 L.Ed.2d 686, 694 (1991); *see Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 754, 122 S.Ct. 1864, 1871, 152 L.Ed.2d 962, 974 (2002) ("[T]he sovereign immunity enjoyed by the States extends beyond the literal text of the Eleventh Amendment.").

In *Alden*, 527 U.S. at 735, 754, 119 S.Ct. at 2257, 2266, 144 L.Ed.2d at 666, 678, while recognizing that the Eleventh Amendment served previously to limit only the Article III jurisdiction of the federal courts, the United States Supreme Court pointed out that states have the right to assert the defense of sovereign immunity in state court proceedings. *Alden* involved a suit by a group of probation officers against their employer, the State of Maine, pursuant to the Fair Labor Standards Act ("FLSA"). The Supreme Court held that Congress lacked authority under its Article I Commerce Clause powers to subject nonconsenting states to private suits in their own courts. *Alden*, 527 U.S. at 712, 119 S.Ct. at 2246, 144 L.Ed.2d at 652.

The import of *Alden* extends beyond its specific holding. The case is notable for analyzing the relationship between the broad doctrine of sovereign immunity and the more specific grant of immunity in the Eleventh Amendment. The Supreme Court thus recognized that the doctrine of sovereign immunity predated the ratification of the Eleventh Amendment, which is not an exhaustive expression of the doctrine:

The Eleventh Amendment makes explicit reference to the States' immunity from suits "commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." We have, as a result, sometimes referred to the States' immuni-

ty from suit as "Eleventh Amendment immunity." The phrase is convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment. Rather, as the Constitution's structure, its history, and the authoritative interpretations by this Court make clear, the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today (either literally or by virtue of their admission into the Union upon an equal footing with the other States) except as altered by the plan of the Convention or certain constitutional Amendments.

\* \* \* \*

[S]overeign immunity derives not from the Eleventh Amendment but from the structure of the original Constitution itself. The Eleventh Amendment confirmed, rather than established, sovereign immunity as a constitutional principle; it follows that the scope of the States' immunity from suit is demarcated not by the text of the Amendment alone but by fundamental postulates implicit in the constitutional design.

\* \* \* \*

[W]hile the Eleventh Amendment by its terms addresses only "the Judicial power of the United States," nothing ... suggested the States were not immune from suits in their own courts.

*Alden,* 527 U.S. at 712–713, 728–29, 742, 119 S.Ct. at 2246–47, 2254, 2260, 144 L.Ed.2d at 652, 662, 670 (citations omitted).

▆▆▆ The United States Supreme Court's decision in *Alden* also emphasized that "a State may waive its sovereign immunity and consent to suit." [5] *Alden,* 527 U.S. at 737, 119

---

**5.** The United States Supreme Court in *Alden* also recognized another exception to the defense of sovereign immunity. That is, Congress may

S.Ct. at 2258, 144 L.Ed.2d at 667. The specific defense of Eleventh Amendment immunity will be waived "where stated 'by the most express language or by such overwhelming implications from the text as [would] leave no room for any other reasonable construction.'" *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1361, 39 L.Ed.2d 662, 678 (1974) (quoting *Murray v. Wilson Distilling Co.,* 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742, 751 (1909)). As the Supreme Court further explained in *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 241, 105 S.Ct. 3142, 3146–47, 87 L.Ed.2d 171, 179 (1985):

> Although a State's general waiver of sovereign immunity may subject it to suit in state court, it is not enough to waive the immunity guaranteed by the Eleventh Amendment. "[A] State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." Thus, in order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in *federal court.*

(Citations omitted.) *See also Port Auth. Trans–Hudson Corp. v. Feeney,* 495 U.S. 299, 307–09, 110 S.Ct. 1868, 1873–74, 109 L.Ed.2d 264, 273–75 (1990) (holding that a venue provision allowing for venue to "be laid within a county or judicial district, established by one of said States or by the United States" constituted a waiver of Eleventh Amendment immunity in an associated consent-to-suit provision); *Fla. Dep't of Health and Rehab. Servs. v. Fla. Nursing Home Ass'n,* 450 U.S. 147, 149–50, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132, 135–36 (1981) (per curiam) (holding that a Florida law providing that the Department of Health and Rehabilitative Services "is a

---

abrogate a State's sovereign immunity pursuant to its enforcement powers under § 5 of the Fourteenth Amendment. *Alden,* 527 U.S. at 756, 119 S.Ct. at 2267, 144 L.Ed.2d at 679. The issue of abrogation is not currently before us, as the Supreme Court held in *Kimel v. Florida Board of Regents,* 528 U.S. 62, 91, 120 S.Ct. 631, 650, 145 L.Ed.2d 522, 547 (2000), that "the ADEA is not a valid exercise of Congress' power under § 5 of the Fourteenth Amendment."

'body corporate' with the capacity to 'sue and be sued' " was a general waiver of sovereign immunity and did not effect a waiver of Eleventh Amendment immunity (citation omitted)).

Since *Alden,* lower courts have indeed recognized a state's immunity from suit in its own courts and the concomitant right to waive such immunity. *See, e.g., Erickson v. Board of Governors of State Colls. & Univs. for N.E. Ill. Univ.,* 207 F.3d 945, 952 (7th Cir.2000) (recognizing that states may "implement a blanket rule of sovereign immunity"); *Jacoby v. Ark. Dep't of Educ.,* 338 Ark. 505, 995 S.W.2d 353, 354 (1999) (ordering rebriefing on the issue of sovereign immunity in light of *Alden); Boise Cascade Corp. v. State ex rel. Or. State Bd. of Forestry,* 164 Or.App. 114, 991 P.2d 563, 566 (1999) (referring to *Alden* and, notwithstanding the text of the Eleventh Amendment, considering the defendant's immunity claim); *Commonwealth v. Luzik,* 259 Va. 198, 524 S.E.2d 871, 878 (2000) (applying *Alden* and holding that Virginia did not waive its sovereign immunity from FLSA claims brought in state court); *Bachmeier v. Hoffman,* 1 P.3d 1236, 1240 (Wyo. 2000) (noting that *Alden* recognized the proposition that states have sovereign immunity in an action brought in state court and that states may waive such immunity).

In Maryland, this Court has "long applied the doctrine of sovereign immunity in actions against the State." *ARA Health v. Dept. of Public Safety,* 344 Md. 85, 91, 685 A.2d 435, 438 (1996) (citing *Katz v. Washington Sub. San. Comm'n,* 284 Md. 503, 507, 397 A.2d 1027, 1030 (1979)). We have opined that the doctrine of sovereign immunity is "a rule of policy which protects the State from burdensome interference with its governmental functions and preserves its control over State agencies and funds." *Katz,* 284 Md. at 507, 397 A.2d at 1030. Also, this Court and the Court of Special Appeals have suggested that the term "sovereign immunity" encompasses the specific defense of Eleventh Amendment immunity. *See ARA Health,* 344 Md. at 91–92, 685 A.2d at 438 (noting that the doctrine of sovereign immunity "precludes suit against the governmental entities absent the State's consent"); *Norville,* 160 Md.App. at 37, 862 A.2d at 492 (" 'The Eleventh Amend-

ment does not define the scope of the States' sovereign immunity; it is but one particular exemplification of that immunity.' " (quoting *Fed. Mar. Comm'n*, 535 U.S. at 753, 122 S.Ct. at 1871, 152 L.Ed.2d at 973)); *Lizzi v. WMATA*, 156 Md.App. 1, 8 n. 4, 845 A.2d 60, 64 n. 4 (2003) ("[W]e point out that Eleventh Amendment immunity is not synonymous with the broader doctrine of sovereign immunity, but is instead a manifestation of it."), *aff'd*, 384 Md. 199, 862 A.2d 1017 (2004).

 ■ When considering waivers of sovereign immunity, this Court and the Court of Special Appeals have strictly construed such waivers in favor of the sovereign. *Lizzi*, 156 Md.App. at 9, 845 A.2d at 65 (quoting *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 261, 119 S.Ct. 687, 691, 142 L.Ed.2d 718, 725 (1999)); *see Magnetti v. University of MD.*, 402 Md. 548, 565, 937 A.2d 219, 229 (2007) (noting that "this Court must read and 'construe legislative dilution of governmental immunity narrowly' ") (quoting *Stern v. Board of Regents*, 380 Md. 691, 720, 846 A.2d 996, 1012–13 (2004)). As such, "[w]hile the General Assembly may waive sovereign immunity either directly or by necessary implication, this Court has emphasized that the dilution of the doctrine should not be accomplished by 'judicial fiat.' " *ARA Health*, 344 Md. at 92, 685 A.2d at 438 (quoting *Dep't of Natural Resources v. Welsh*, 308 Md. 54, 59, 521 A.2d 313, 315 (1986)); *Board v. John K. Ruff, Inc.*, 278 Md. 580, 590, 366 A.2d 360, 366 (1976) ("[W]hen the General Assembly expressly authorizes suits to be brought against one of the State's agencies, it is the giving of a positive consent and has the effect of waiving sovereign immunity as to that agency within its scope of duties and obligations.").

We had the opportunity to address a potential waiver of Eleventh Amendment immunity in *State v. Sharafeldin*, 382 Md. 129, 854 A.2d 1208 (2004). We analyzed, among other things, the extent to which § 12–201 of the State Government Article waived the State's governmental immunity in contract actions. We recognized that the statute "precludes the State and its agencies from raising the defense of sovereign immuni-

ty in a contract action 'in a court *of* the State' " *Sharafeldin,* 382 Md. at 149, 854 A.2d at 1219. We held that the plain language "in a court of the State" excluded Eleventh Amendment immunity from § 12–201's general waiver of sovereign immunity. *Id.*

■ Turning to the instant case, we note that discerning the extent to which § 5–518(c) of the Courts and Judicial Proceedings Article waives the Board's governmental immunity requires a two-part determination. First, applying Maryland law, we must determine whether the statute constitutes a waiver of the Board's general sovereign immunity as to Zimmer–Rubert's ADEA suit. If § 5–518(c) constitutes such a waiver, then we must also determine whether the statute waives the Board's Eleventh Amendment immunity.[6] Because

---

6. In so doing, we acknowledge that there has been some conflict in this Court as to the impact of the Eleventh Amendment in state court proceedings. *Compare Glover v. Glendening,* 376 Md. 142, 150 n. 3, 829 A.2d 532, 536 n. 3 (2003) ("The Eleventh Amendment, however, is not applicable to actions in a Maryland trial court. An Eleventh Amendment 'argument is essentially one of federal court jurisdiction and federal constitutional law.' ") (quoting *Widgeon v. E. Shore Hosp. Center,* 300 Md. 520, 537, 479 A.2d 921, 929 (1984)), *with Md. Military Dep't v. Cherry,* 382 Md. 117, 122, 854 A.2d 1200, 1203 (2004) (stating that in *Alden* "the Supreme Court held that the Eleventh Amendment is applicable to actions in state court"). An abundance of authority suggests that the United States Supreme Court's decision in *Alden* relied exclusively on common law principles of sovereign immunity, that the Eleventh Amendment serves to limit the jurisdiction of the federal courts only, and that the Amendment has no application in state court proceedings. *See, e.g., Alden v, Maine,* 527 U.S. 706, 760, 119 S.Ct. 2240, 2269, 144 L.Ed.2d 636, 682 (1999) (Souter, J., dissenting) (stating that the *Alden* majority recognized that "the state forum render[ed] the Eleventh Amendment beside the point"); *Pittman v. Oregon,* 509 F.3d 1065, 1072 (9th Cir.2007) (noting that "the 'Eleventh Amendment does not apply in state courts' " (quoting *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 63–64, 109 S.Ct. 2304, 2308, 105 L.Ed.2d 45, 53(1989))); *Ala. State Docks Terminal Ry. v. Lyles,* 797 So.2d 432, 436 (Ala.2001) ("While the Eleventh Amendment governs the jurisdiction of federal courts over the states and immunizes the states from certain actions in the federal courts, the Eleventh Amendment is not the source of a state's immunity from actions in its own courts." (citing *Alden,* 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636)); *Severson v. Bd. of Trs. of Purdue Univ.,* 777 N.E.2d 1181, 1189 (Ind.Ct.App.2002) (recognizing that the Eleventh Amendment does not apply in state court); *Schall v.*

the latter determination involves a question of federal constitutional law, our inquiry is not limited to Maryland common law principles. As to both determinations, however, we shall apply traditional rules of statutory interpretation, remaining mindful of the policies underlying governmental immunity.

In *Kushell v. DNR*, 385 Md. 563, 576–77, 870 A.2d 186, 193–94 (2005), we recited the principles of statutory interpretation as follows:

> The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the Legislature. *See Collins v. State*, 383 Md. 684, 688, 861 A.2d 727, 730 (2004). Statutory construction begins with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology. *Deville v. State*, 383 Md. 217, 223, 858 A.2d 484, 487 (2004).

> \* \* \* \*

> If statutory language is unambiguous when construed according to its ordinary and everyday meaning, then we give effect to the statute as it is written. *Collins*, 383 Md. at 688–89, 861 A.2d at 730. "If there is no ambiguity in that language, either inherently or by reference to other relevant laws or circumstances, the inquiry as to legislative intent

---

*Wichita State Univ.*, 269 Kan. 456, 7 P.3d 1144, 1151 (2000) ("[T]he Eleventh Amendment prohibits suits against sovereign states in federal court but ... it ha[s] no application to suits brought in state court." (citing *Americare Props., Inc. v. Whiteman*, 257 Kan. 30, 891 P.2d 336 (1995))); Coquillette et al, Moore's Federal Practice 123.22[3][a] (3d ed. 2009) ("The Eleventh Amendment does not affect state court jurisdiction to adjudicate suits against a state. Nevertheless, sovereign immunity, derived apart from the literal text of the Eleventh Amendment, bars a citizen from suing the citizen's own state."); Erwin Chemerinsky, Constitutional Law: Principles and Policies 196 (3d ed. 2006) ("The Eleventh Amendment only applies in federal court; it does not prevent a state from being sued in its own courts or in another state's courts."). Notwithstanding, we need not resolve that conflict in this case, for we conclude that the plain language of § 5–518(c) of the Court and Judicial Proceedings Article waives all of the Board's governmental immunity, including its Eleventh Amendment immunity, to claims of $100,000 or less.

ends; we do not need to resort to the various, and sometimes inconsistent, external rules of construction, for 'the Legislature is presumed to have meant what it said and said what it meant.'" *Arundel Corp. v. Marie*, 383 Md. 489, 502, 860 A.2d 886, 894 (2004) (quoting *Witte v. Azarian*, 369 Md. 518, 525, 801 A.2d 160, 165 (2002)).

Nevertheless, we may resort to legislative history to ensure that our plain language interpretation is correct. *See Kramer v. Liberty Property*, 408 Md. 1, 22, 968 A.2d 120, 132 (2009). "'We avoid a construction of the statute that is unreasonable, illogical, or inconsistent with common sense.'" *Walzer v. Osborne*, 395 Md. 563, 573, 911 A.2d 427, 432 (2006) (quoting *Blake v. State*, 395 Md. 213, 224, 909 A.2d 1020, 1026 (2006)).

By its plain language, § 5–518(c) of the Courts and Judicial Proceedings Article waives the defense of sovereign immunity "to *any* claim of $100,000 or less" (emphasis added). We cannot conclude that such broad and unambiguous language preserves the defense of sovereign immunity as to Zimmer–Rubert's claim, arising pursuant to the ADEA for the amount of $100,000. We thus agree with the Court of Special Appeals' determination that "the words 'any claim' cannot reasonably be read to exclude certain categories of claims." *Zimmer–Rubert*, 179 Md.App. at 612, 947 A.2d at 149; *accord Norville*, 160 Md.App. at 70, 862 A.2d at 511 ("Under the settled approach to statutory interpretation, the words 'any claim' [in § 5–518(c)] cannot reasonably be read to exclude certain categories of claims.").

In addition, reference to legislative history confirms that the words "any claim" in § 5–518(c) mean "*all*" claims." What is currently known as Md.Code (1974, 2006 Repl.Vol.), § 5–518 of the Courts and Judicial Proceedings Article was first introduced in 1971 as House Bill 610. Originally, the House proposed that county school boards carry liability insurance "for personal injury claims." H.B. 610, 373rd Leg., Reg. Sess. (Md.1971). This language, however, was stricken in favor of language requiring "*comprehensive* liability insurance" (emphasis added). We conclude that such a change

exemplifies the intent of the General Assembly to apply § 5–518(c) to all claims, including those for personal injury and alleged employment law violations.

Having concluded that § 5–518(c) embraces all claims, thereby effecting a waiver of sovereign immunity in this case, we also hold that the statute effects a waiver of the Board's Eleventh Amendment immunity. A waiver of Eleventh Amendment immunity will be found "where stated 'by the most express language or by such overwhelming implications from the text as [would] leave no room for any other reasonable construction.'" *Edelman*, 415 U.S. at 673, 94 S.Ct. at 1361, 39 L.Ed.2d at 678 (quoting *Murray*, 213 U.S. at 171, 29 S.Ct. at 464, 53 L.Ed. at 751). A state waives Eleventh Amendment immunity by "specify[ing its] intention to subject itself to suit in federal court." *Atascadero*, 473 U.S. at 241, 105 S.Ct. at 3146–47, 87 L.Ed.2d at 179. Here, the State specified its intention to subject itself to suit in federal court, as the words "any claim" in § 5–518(c) encompass a claim brought in either state *or* federal court. Thus, in contrast to the statute at issue in *Sharafeldin*, 382 Md. at 149, 854 A.2d at 1219, the General Assembly has not demonstrated an intent to preserve its Eleventh Amendment immunity. In other words, as *Sharafeldin* makes plain, § 5–518(c) is an express waiver of all governmental immunity; if the General Assembly intended to preserve the State's Eleventh Amendment protection, that body knew how to do so by merely limiting the State's liability to any claim brought "in a court in this State," or words to that effect.

Moreover, our principles of statutory interpretation avoid a result that is illogical or inconsistent with common sense. *Walzer*, 395 Md. at 573, 911 A.2d at 432 (quoting *Blake*, 395 Md. at 224, 909 A.2d at 1026). The policy underlying sovereign immunity is to "protect[ ] the State from burdensome interference with its governmental functions." *Katz*, 284 Md. at 507, 397 A.2d at 1030. It would defy logic for the General Assembly to have waived sovereign immunity as to "any claim," thereby allowing all claims, whether in state or

federal court, while simultaneously intending to preserve Eleventh Amendment immunity. We therefore conclude that § 5–518(c) of the Court and Judicial Proceeding Article waives the Board's governmental immunity, including its Eleventh Amendment immunity, for all claims in the amount of $100,000 or less.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED, WITH COSTS.*